03/14/2005 MON 15:10 FAX 781 395 3569 JOHN H MOLLOY ESQ                    ☑002/005

FROM GONZALEZ & LEVIN        Case 1:05-mj-00413-RBC    Document 7    Filed 03/14/2005    Page 1 of 3
(MON) MAR 14 2005 15:07/ST. 15:07/No. 6810163200 P   1

03/14/2005 MON 14:34 FAX 781 395 3569 JOHN H MOLLOY ESQ                    ☑001/002

Loan No
Borrower                 Cary .Maldonado

Lender
Property                 **114 Essex Street, Lynn, MA 01902**

Amount of Mortgage       $50,000.00
Consideration $
Date of Recording

### Massachusetts
### Certification of Title

We hereby certify that title to the above described property has been examined in the appropriate Registry of Deeds, and that at the time of recording of the mortgage from the mortgagor to the mortgagee, the mortgagor held a good and sufficient title to the above property, free from all encumbrances, excepting only matters which are expressly enumerated therein and in the Schedule attached hereto is incorporated into and made a part of this Certification.

We further certify that the mortgagee holds a good and sufficient record first mortgage to the property subject only to the matters excepted by this Certification and the attached Schedule.

This Certification is given in accordance with the Massachusetts General Laws, Chapter 93, Section 70 as amended, and shall be limited as to the mortgagor, to the amount of the consideration shown on the deed and for only as long as the mortgagor has title to the mortgaged premises, and shall be limited as to the mortgagee, to the original principal amount secured by the mortgage and for only so long as the original debt secured by the mortgage remains unpaid.

This certification does not cover any possible defects, encumbrances or adverse claims resulting from any factual inaccuracy or the lack of authenticity of any of the instruments and documents appearing in the public records which were examined on or account of any inaccuracy, error or omission in the indices of such public records, as we are not responsible for determining and have not determined the accuracy and authenticity of such matters.

Neither the mortgagee nor counsel for the mortgagee have made any detailed inspection of the property and do not warrant or make any representations respecting the condition or fitness of any part thereof.

EXECUTED this ___March 14, 2005___.

ATTORNEY:

# SCHEDULE A

## 114 ESSEX STREET, LYNN, MA 01902

1.   Mortgage from Cary Maldonado to Green Point Mortgage dated January 13, 2005 in the amount of $318,500.00 recorded in Essex South Registry District Registry of Deeds in Book 23881, Page 5.

2.   Mortgage from Cary Maldonado to Green Point Mortgage dated January 13, 2005 in the amount of $60,000.00 recorded in Essex South Registry District Registry of Deeds in Book 23881, Page 27.





2003022700427 Bk:20240 Pg:19
02/27/2003 09:36:00 DEED Pg 1/2

### QUITCLAIM DEED

I, **JOSE MALDONADO,** of Lynn, Essex County, Massachusetts,
in consideration of One ($1.00) Dollar

**GRANT** all my right, title and interest in and to property at   114 Essex Street,
_Lynn, MA_____ to

**CARY MALDONADO,** Individually, of Lynn, Essex County, Massachusetts

#### with Quitclaim Covenants

Description of Property:

SEE Exhibit "A" attached hereto and made a part thereof.


Being the same premises conveyed to Jose Maldonado and Cary Maldonado by Deed
dated October 25, 2002 recorded with the Essex South Registry of Deeds at Book
_19570_, Page _31295_

Executed as a sealed instrument this _26th_ day of _February_____, 2003.

_____
Jose Maldonado

### The Commonwealth of Massachusetts

_Middlesex_____, ss.                                    _February 26,___, 2003

Then personally appeared the above-named Jose Maldonado, known to me to be
the person described in and who executed the foregoing instrument, and acknowledged
that he executed the same as his free act and deed, before me

_____
Notary Public
My Commission Expires:   03/__/2005

Locus: 114 Essex Street, Lynn, MA 01902



**Property Address:**

114 Essex Street
Lynn, MA 01902

**Appraisal Prepared For:**

New Fed Mortgage Corp.
1711 Broadway, Saugus, MA 01906

**Prepared As Of:**

12/20/04

**Prepared By:**

Matthews Appraisal Associates
P.O. Box 251, Swampscott, MA 01907

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No. **128.124AM**

| | | | |
|---|---|---|---|
| Property Address 114 Essex Street | City Lynn | State MA | Zip Code 01902 |
| Legal Description So. Essex Reg of Deeds Book 20240 Page 193 | | County Essex | |
| Assessor's Parcel No. 524-008-001 | Tax Year 04 | R.E. Taxes $ 3340.99 | Special Assessments $ None |
| Neighborhood or Project Name N/A / 5MSA# 1120 | Map Reference See map | Census Tract 2064 | |
| Borrower Cary Maldonado | Current Owner Cary Maldonado | Occupant ☒ Owner ☐ Tenant ☐ Vacant | |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Project Type ☐ PUD ☐ Condominium | HOA $ N/A /Mo. | |
| Sales Price $ Ref. | Date of Sale N/A | Description and $ amount of loan charges/concessions to be paid by seller N/A | |
| Lender/Client New Fed Mortgage Corp. | Address 1711 Broadway, Saugus, MA 01906 | | |
| Appraiser Matthews Appraisal Associates | Address P.O. Box 251, Swampscott, MA 01907 | | |

| Location | ☒ Urban | ☒ Suburban | ☐ Rural | Predominant Single Family Occupancy | Single family housing | | Predominant 2-4 Family Occupancy | 2-4 family housing | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | PRICE $(000) | AGE (yrs) | | PRICE $(000) | AGE (yrs) |
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | ☒ Owner | 180 Low | New | ☒ Owner 50 | 275 Low | 50 |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | ☐ Tenant | 450 High | 100+ | ☒ Tenant 50 | 575 High | 100+ |
| Property values | ☐ Increasing | ☒ Stable | ☐ Declining | ☐ Vacant (0-5%) | Predominant | | ☒ Vacant (0-5%) | Predominant | |
| Demand/supply | ☐ Shortage | ☒ In balance | ☐ Over supply | ☐ Vacant (Over 5%) | 275 | 100 | ☐ Vacant (Over 5%) | 400 | 100 |
| Marketing time | ☒ Under 3 mos | ☐ 3-6 mos | ☐ Over 6 mos | | | | | | |

| Typical 2-4 family bldg. Type Detached | No. stories 2-3. | No units 2-4. | Age 100 yrs | Present land use % | Land use change |
|---|---|---|---|---|---|
| Typical rents $ 450. to $ 1800 ☒ Increasing ☐ Stable ☐ Declining | | | | One family 35 | ☒ Not likely ☐ Likely |
| Est. neighborhood apt. vacancy 5 % ☐ Increasing ☒ Stable ☐ Declining | | | | 2-4 family 45 | ☐ In process for |
| Rent controls ☐ Yes ☒ No ☐ Likely If yes or likely, describe | | | | Multi-family 10 | |
| | | | | Commercial 10 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics **Bordered by Western Avenue (State Route 107) to the west, Eastern Avenue to the north,** Washington Street to the south and Lewis Street to the east

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.)
See attached addendum...

The following available listings represent the most current, similar, and proximate competitive properties to the subject property in the subject neighborhood. This analysis is intended to evaluate the inventory currently on the market competing with the subject property in the subject neighborhood and recent price and marketing time trends affecting the subject property. (Listings outside the subject neighborhood are not considered applicable). The listing comparables can be the rental or sale comparables if they are currently for sale.

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| Address | 114 Essex Street Lynn, MA 01902 | 74 Rockaway Street Lynn, MA | 382 Eastern Avenue Lynn, MA | 324 Essex Street Lynn, MA |
| Proximity to subject | | .78 Miles SW | .36 Miles N | .57 Miles SW |
| Listing price | $ Ref. | ☒ Unl ☐ Furn $ 409000 | ☒ Unl ☐ Furn $ 419000 | ☒ Unl. ☐ Furn $ 399000 |
| Approximate GBA | 3370 | 2716 | 2352 | 2150 |
| Data source | Inspection/Pub.Rec. | MLS/Pub. Rec. | MLS/Pub. Rec. | MLS/Pub. Rec. |
| # Units/Tot rms/BR/BA | 2 14 8 3 | 2 13 8 2 | 2 10 5 2 | 2 10 6 2 |
| Approximate year built | 1930 | 1900 | 1925 | 1900 |
| Approx days on market | | 7 | 36 | 5 |

Comparison of listings to subject property. See attached addendum...

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above neighborhood indicators of growth rate, property values, demand/supply, and marketing time) and the prevalence and impact on the subject market area regarding loan discounts, interest buydowns and concessions, and identification of trends in listing prices, average days on market and any change over past year, etc.: **Marketing time of 2-4 months is typical for multi-** family properties, with 90 days or less marketing time found for properties that are favorably priced, in updated condition and in conforming residential locations. The best available 2 family listings in the subject town are offered as listing comparables. Market is in balance with demand but near shortage levels with strong demand for multifamily homes in the community. Atypical financing terms or seller concessions not being common. Property values have seen appreciation over the past 12 months generally ranging from 1/4% to 1% per month depending on property type and location. There is some evidence of stabilization in some market segments. This trend is expected to continue to some degree for the immediate future.

| Dimensions 50' street frontage, 101' to 103' depth (deed) | | Topography | Level |
|---|---|---|---|
| Site area 5081 SqFt | Corner Lot ☐ Yes ☒ No | Size | Typical for the area |
| Specific zoning classification and description R4= Residential - Min. 15,000' site/ 50' Front | | Shape | Rectangular |
| Zoning compliance ☐ Legal ☒ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage | Appears Adequate |
| Highest & best use as improved ☒ Present use ☐ Other use (explain) | | View | Neighborhood/Average |
| | | Landscaping | Typical |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Asphalt | ☒ | | Driveway | Asphalt |
| Gas | ☒ | | Curb/Gutter | Granite | ☒ | | Apparent Easements | None noted |
| Water | ☒ | | Sidewalk | Concrete | ☒ | | | |
| Sanitary Sewer | ☒ | | Street Lights | Incandescent | ☒ | | FEMA Special Flood Hazard Area ☐ Yes ☒ No | |
| Storm Sewer | ☒ | | Alley | None | | | FEMA Zone Zone C Map Date 2/1/85 | |
| | | | | | | | FEMA Map No. 250088 0006 B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): See attached addendum...

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No. 12B.124AM

| General description | | Exterior description | (Materials/condition) | Foundation | | Insulation | (R-value if known) |
|---|---|---|---|---|---|---|---|
| Units/Bldg. | 2 / 1 | Foundation | Stone/Brick/Avg | Slab | 0% | Roof | |
| Stories | 2.2 | Exterior walls | Shingle/Avg | Crawl space | 0% | Ceiling | |
| Type (det./att.) | Detached | Roof surface | Asphalt/Avg | Sump Pump | None | Walls | |
| Design (style) | 2 Family | Gutters & Dwnspts. | Aluminum/Avg | Dampness | None Evid. | Floor | |
| Existing/proposed | Existing | Window Type | D-Hung Wd/Avg | Settlement | None Evid. | None | Unknown |
| Under construction | N/A | Storm sash/Screens | Combo/Avg | Infestation | None Evid. | Adequacy Avg. | |
| Year Built | 1930 | Manufactured housing* | ☐ Yes ☒ No | Basement | 100 % of 1st floor area | Energy efficient items | |
| Effective age (yrs.) | 10 | *(Complies with the HUD Manufactured Housing | | Basement finish | 90% finished | | |
| Rem. Eco. | 55 | Construction and Safety Standards ) | | | 4 Rooms, Bath | | |

| Units | Level(s) | Foyer | Living | Dining | Kitchen | Den | Family rm. | # Bedrooms | # Baths | Laundry | Other | Sq Ft/Unit | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | Area | 1 | 1 | 1 | | | 2 | 1.00 | | | 1273 | 1273 |
| 1 | 1 & 2 | Area | 1 | 1 | 1 | | | 6 | 2.00 | | | 2097 | 2097 |
| | | | | | | | | | | | | | 0 |
| Improvements contain | 14 | Rooms: | 8 | Bedroom(s): | 3.0 | Bath(s): | 3370 | | | | Square feet of GROSS BUILDING AREA | | |

GROSS BUILDING AREA (GBA) IS DEFINED AS THE TOTAL FINISHED AREA (INCLUDING COMMON AREAS) OF THE IMPROVEMENTS BASED UPON EXTERIOR MEASUREMENTS.

| Surfaces | (Materials/condition) | Heating | | Kitchen equip. | (#/unit-cond) | Attic | | Car storage: | No. Cars 4+ |
|---|---|---|---|---|---|---|---|---|---|
| Floors | Hdwd/Cpt/Tile/Gd | Type | FHW | Refrigerator | | None | ☐ | Garage | ☐ |
| Walls | Plaster/Gd | Fuel | Oil | Range/oven | 2/Gd | Stairs | ☒ | Carport | ☐ |
| Trim/Finish | Wood/Avg | Condition | Gd | Disposal | | Drop stair | ☐ | Attached | ☐ |
| Bath floor | Marble/Tile/Gd | | | Dishwasher | | Scuttle | ☐ | Detached | ☐ |
| Bath wainscot | Marble/Tile/Gd | Cooling | | Fan/hood | 2/Gd | Floor | ☒ | Adequate | ☐ |
| Doors | Wood/Avg | Central | None | Compactor | | Heated | ☒ | Inadequate | ☐ |
| | | Other | None. | Washer/Dryer | | Finished | ☒ | Distant | ☒ |
| | | Condition | N/A | Microwave | | Unfinished | ☐ | None | ☐ |
| Fireplace(s) None # 0 | | | | Intercom | | Inc. in gla | | | |

Condition of the improvements, repairs needed, quality of construction, additional features, modernization, etc.    See attached addendum.

Depreciation (physical, functional, and external inadequacies, etc.):    The floor plan is functional and there are no apparent adverse external or functional inadequacies. The rooms are average size for a property with these foundation dimensions. Any depreciation is a result of normal wear and tear over the life of the property. Remaining economic life is 55 years based upon a total economic life of 65 years.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property.    At the time of the inspection the appraiser did not observe and apparent environmental deficiences. Although the appraiser is not knowledgeable in environmental or 21E law, a general observation for obvious adverse environmental items was made; none were apparent. Environmental hazards such as radon gas, Urea Formaldehyde Foam Insulation, Lead Paint, Etc. cannot be determined during the appraisal and would be better determined by an expert in the above referenced fields.

### VALUATION ANALYSIS

| | | | Comments on Cost Approach (such as, source or cost estimate, site value, square foot calculation and, for HUD and VA, the estimated remaining economic life or the property): |
|---|---|---|---|
| ESTIMATED SITE VALUE | = $ | 140000 | |
| ESTIMATED REPRODUCTION COST - NEW OF IMPROVEMENTS: | | | Cost approach estimates are based upon cost estimates from local |
| 3370 Sq.Ft. @ $ 94.00 | = $ | 316780 | builders and contractors and figures from cost services such as |
| 1273 Bsmnt Sq.Ft. @ $ 22.00 | = $ | 28006 | Marshall and Swift. Depreciation calculated via the Age-Life |
| Sq.Ft. @ $ | = $ | 0 | method. |
| Sq.Ft. @ $ | = $ | 0 | |
| Sq.Ft. @ $ | = $ | | |
| Garage | = $ | 12500 | Remaining economic life is 55 years. |
| | = $ | | |
| | = $ | | |
| | $ | | Land value is 30% which is typical for the area due to demand and |
| Special Energy Efficient Items | = $ | | lack of supply. Land value is via extraction method due to lack of land |
| Porches, Patios, etc. Porches | = $ | 16000 | sales. Land value estimate is supported by comparable sales utilized |
| Total Estimated Cost New | = $ | 373286 | within this report. |

| | Physical | Functional | External | | | |
|---|---|---|---|---|---|---|
| Less | 15% | | | | | |
| Depreciation | 56000 | | | = $ | -56000 | |
| Depreciated Value of Improvements | | | | = $ | 317286 | |
| "As Is" Value of Site Improvements | | | | = $ | 4000 | |
| INDICATED VALUE BY COST APPROACH | | | | = $ | 461300 | |

Freddie Mac Form 72  10-94    10 CH    This form was reproduced by United Systems Software Company (800) 969-8727 • Page 2 or 4    Fannie Mae Form 1025  10-94

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No. 128,124AM

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties as similar and proximate to the subject property as possible. (This comparison is based on current rental data, therefore, the rental comparables typically are not the same comparables used in the sales comparison analysis.) The appraisal report should assure the reader that the units and properties selected as comparables are comparative to the subject property (both the units and the overall property) and accurately represent the rental market for the subject property (unless otherwise stated within this report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 114 Essex Street Lynn, MA 01902 | 159A Essex Street Lynn, MA .12 Miles SW | 349 Essex Street Lynn, MA .58 Miles SW | 11 Pinkham Place Lynn, MA .56 Miles SW |
| Proximity to subject | | | | |
| Lease dates (if available) | TAW | TAW | TAW | TAW |
| Rent survey date | 12/04 | 12/04 | 12/04 | 12/04 |
| Data source | Inspection/Pub.Rec. Assessor | MLS Public Records | MLS Public Records | MLS Public Records |
| Rent concessions | None noted | None noted | None noted | None noted |
| Description of property-units, design appeal, age, vacancies and conditions | #Units 2  #Vac. 0  Yr Blt. 1900 Yr Blt. 1930 3 Family Avg Appeal Gd Condition Avg Location | #Units 3  #Vac 0  Yr Blt. 1900 3 Family Avg Appeal Avg/Gd Condition Avg Location | #Units 3  #Vac 0  Yr Blt. 1900 3 Family Avg Appeal Gd Condition Avg Location | #Units 2  #Vac. 0  Yr Blt. 1900 2 Family Avg Appeal Gd Condition Avg Location |

| | Room Count | | | Size Sq. Ft. | Total Monthly Rent | Room Count | | | Size Sq. Ft. | Total Monthly Rent | Room Count | | | Size Sq. Ft. | Total Monthly Rent | Room Count | | | Size Sq. Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tot | Br | Bath | | | Tot | Br | Bath | | | Tot | Br | Bath | | | Tot | Br | Bath | | |
| Individual unit breakdown | 5 | 2 | 1.00 | 1273 | | 5 | 2 | 1.00 | 800 | 1200 | 5 | 2 | 1.00 | 1149 | 1195 | 6 | 3 | 1.00 | 1120 | Owner |
| | 9 | 6 | 2.00 | 2097 | | 5 | 2 | 1.00 | 800 | 1075 | 5 | 2 | 1.00 | 1149 | 1175 | 7 | 4 | 2.00 | 1648 | 1400 |
| | 0 | | | | | 5 | 2 | 1.00 | 720 | 1100 | 4 | 2 | 1.00 | 1149 | 1100 | | | | | |
| | 0 | | | | | | | | | | | | | | | | | | | |

| Utilities, furniture, and amenities included in rent | No utilities included In Rent | No Utilities Included In Rent | No Utilities Included In Rent | No Utilities Included In Rent |
|---|---|---|---|---|
| Functional utility, basement, heating/cooling, project amenities, etc. | Average Utility Full/Finished Individual Heat 2 Car Gar/On site Porches None | Average Utility Full/Unfinished Individual Heat On site parking Porch/Deck None | Average Utility Full/Unfinished Central Heat On site parking Porch None | Average Utility Full/Unfinished Individual Heat On site parking Porches None |

Analysis of rental data and support for estimated market rents for the individual subject units (including the adjustments used, the adequacy of comparables, rental concessions, etc.)

See attached addendum...

Subject's rent schedule: The rent schedule reconciles the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must review the rent characteristics and the comparable sales to determine whether estimated rents should reflect actual or market rents. For example, if actual rents were not available on the sales comparables and used to derive the gross rent multiplier (GRM), market rents should be used. The total gross estimated rent should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consistent with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| Unit | Lease Date Begin | End | No. Units Vacant | ACTUAL RENTS Per Unit Unfurnished | Furnished | Total Rents | ESTIMATED RENTS Per Unit Unfurnished | Furnished | Total Rents |
|---|---|---|---|---|---|---|---|---|---|
| 1 | TAW | TAW | 0 | $ 1200 | | $ 1200 | $ 1200 | $ | $ 1200 |
| 2 | Owner | Owner | 0 | 0 | | | 1800 | | 1850 |
| | | | | 0 | | | 0 | | |
| 2 | | | | 0 | | | | | |
| | | | | | | $ 1200 | | | $ 3050 |

Other monthly income (itemize)  None

Vacancy: Actual last year  0  % Previous year  0  % Estimated  5  % $  1830  Annually    Total gross estimated rent  $ 3050

Utilities included in estimated rents:  ☐ Electric  ☒ Water  ☒ Sewer  ☒ Gas  ☐ Oil  ☐ Trash collection  ☐ None

Comment on the rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rents), utilities, etc.:  The estimated rents provided are derived from the market and are within range of the rental comparables, taking into account square footage of the units, location, condition, and current market conditions (supply and demand). This information is obtained via the appraiser's analysis of rental data in the area as well as consultation with brokers who are familiar with market conditions in the area. The subject's first floor unit is currently occupied for $1,200 per month which is considered market rent. The second unit consists of the second and third floor along with the finished basement space and is owner occupied. Based upon this analysis, the subject can command a market rent of $1850 for this owner occupied unit. Estimated rents are with consideration for unit size, condition and appeal. Estimated rents are with owner providing water and sewer and tenant paying heat and all other utilities. See attached addendum for additional comments.

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No. 128.124AM

The undersigned has recited three recent sales of properties most similar and proximate to the subject property and has described and analyzed these in this analysis. If there is a significant variation between the subject and comparable properties, the analysis includes the dollar adjustment reflecting the market reaction to those items or an explanation supporting the market data. If a significant item in the comparable property is superior to or more favorable than the subject property ( minus ( ) adjustment is made, thus reducing the adjusted sales price of the comparable property, if a significant item in the comparable property is inferior to, or less favorable than, the subject property a plus ( + ) adjustment is made, thus increasing the adjusted sales price of the comparable property. ( ) Sales Price - - Gross Monthly Rent

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 114 Essex Street | 137 Alley Street | | 174 Western Avenue | | 132 Empire Street | |
| | Lynn, MA 01902 | Lynn, MA | | Lynn, MA | | Lynn, MA | |
| Proximity to subject | | 1.62 Miles SW | | .93 Miles SW | | .11 Miles N | |
| Sales price | $ Ref. | ☒ Uni ☐ Furn $ 428000 | | ☒ Uni ☐ Furn $ 426000 | | ☒ Uni ☐ Furn $ 410000 | |
| Sales price per GBA | $ | $ 147.38 | | $ 117.97 | | $ 185.02 | |
| Gross monthly rent | $ 3050 Est. | $ 2900 Est. | | $ 2900 Est. | | $ 2700 Est. | |
| Gross mo. rent mult (1) | 0.00 | 148 | | 147 | | 152 | |
| Sales price per unit | $ 0 | $ 214000 | | $ 213000 | | $ 205000 | |
| Sales price per room | $ | $ 30571 | | $ 30429 | | $ 34167 | |
| Data and/or | Inspection/Pub.R | MLS/Broker | | MLS/Broker | | MLS/Broker | |
| Verification Sources | Assessor | Assessor | | Assessor | | Assessor | |
| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | ( (-)$ Adjustment | DESCRIPTION | ( (-)$ Adjustment | DESCRIPTION | ( (-)$ Adjustment |
| Sales or financing concessions | | None Disclosed | | None Disclosed | | None Disclosed | |
| Date of sale/time | | 12/20/04 | 0 | 12/21/04 | 0 | 10/29/04 | 0 |
| Location | Residential/Avg | Residential/Avg | | Residential/Avg | | Residential/Avg | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5081 SF 100%U | 4905 SF 100%U | | 7124 SF 100%U | 0 | 3502 SF 100%U | 3000 |
| View | Neighborhood/Av | Neighborhood/Av | | Neighborhood/Av | | Neighborhood/Av | |
| Design and appeal | 2 Family/Avg. | 2 Family/Avg | | 2 Family/Avg | | 2 Family/Avg | |
| Quality of construction | Average | Average | | Average | | Average | |
| Age | 74 yrs. | 104 yrs | | 94 yrs | 20000 | 104 yrs | |
| Condition | Good | Similar | | Inferior | | Similar | |
| Gross Building Area | 3370 Sq. Ft. | 2904 Sq. Ft. | 6990 | 3611 Sq. Ft. | -3615 | 2216 Sq. Ft. | 17310 |
| Unit breakdown | No. units / Tot / Br / Bath / No vac. | No. units / Tot / Br / Bath / No vac. | | No. units / Tot / Br / Bath / No vac. | | No. units / Tot / Br / Bath / No vac. | |
| | 1 5 2 1.00 0 | 1 5 2 1.00 0 | | 1 5 2 1.00 0 | | 1 4 2 1.00 0 | |
| | 1 9 6 2.00 0 | 1 9 6 2.00 0 | | 1 9 6 2.00 0 | | 1 8 5 1.00 0 | 6000 |
| Basement description | Full/4rooms, bath | Full/Unfinished | 12000 | Full/Unfinished | 12000 | Full/Unfinished | 12000 |
| Functional utility | Average | Average | | Average | | Average | |
| Heating/cooling | Individual/None | Individual/None | | Individual/None | | Individual/None | |
| Parking on/off site | 2 Car Gar/On site | On site | 5000 | 2 Car Gar/On site | | 2 Car Gar/On site | |
| Project amenities and fee (if applicable) | 4 Cov. Porches | Enc. porch | 4500 | 4 Cov. Porches | | None | 6000 |
| Other | None | None | | None | | None | |
| Net Adj. (total) | | ☒ + ☐ - $ | 28500 | ☒ + ☐ - $ | 28400 | ☒ + ☐ - $ | 44300 |
| Adjusted sales price of comparables | | $ | 456500 | $ | 454400 | $ | 454300 |

Comments on sales comparison (including reconciliation of all indicators of value as to consistency and relative strength and evaluation of the typical investor/purchaser motivation in that market)    See attached addendum.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | 2/27/03 $1(family transfer Assessor/Deed | No Prior Sales Within 12 Months Assessor | No Prior Sales Within 12 Months Assessor | No Prior Sales Within 12 Months Assessor |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales or subject and comparables within one year of the date of appraisal

See attached addendum.

Total gross monthly estimated rent $ 3050 x gross rent multiplier (GRM) 149 = $ 454450    INDICATED VALUE BY INCOME APPROACH

Comments on income approach (including support ratios if available, and reconciliation of the GRM)    Based on the above data, the indicated GRM for the subject property is 129.

| | |
|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | $ 455000 |
| INDICATED VALUE BY INCOME APPROACH | $ 454450 |
| INDICATED VALUE BY COST APPROACH | $ 461286 |

This appraisal is made ☒ "as is"    ☐ subject to the repairs, alterations, inspections or conditions listed below    ☐ subject to completion per plans and specifications

Comments and conditions of appraisal    This appraisal is made in "AS IS" condition. This is a complete summary appraisal report

Final reconciliation:    All three approaches are considered. The Cost Approach is given the least weight due to age of dwelling. The Income Approach is applicable but weighted less due to typical two family in the area being owner occupied. The Sales Comparison Approach is given the greatest weight in the final analysis.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae 1004B ( Revised 6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 12/20/04 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 455000

APPRAISER:    SUPERVISORY APPRAISER (ONLY IF REQUIRED):

Signature    Signature    ☐ Did ☐ Did not inspect property

Name Allan Matthews    Name

Date Report Signed 12/29/04    Date Report Signed

State Certification # 4234 CG    State MA    State Certification #    State

Or State License #    State    Or State License #    State

Freddie Mac Form 72  10-94    10 EH.    This form was reproduced by United Systems Software Company (800) 969-8727 - Page 4 of 4    Fannie Mae Form 1025  10-94

## TEXT ADDENDUM

File No. J28,124AM

| | | | | |
|---|---|---|---|---|
| Borrower/Client | Cary Maldonado | | | |
| Address | 114 Essex Street | | | |
| City | Lynn | County | Essex | State MA | Zip Code 01902 |
| Lender/Client | New Fed Mortgage Corp. | | | |

**Personal Property...**

Personal property has not been valued or considered in the final value estimate.

**Neighborhood Marketability Factors...**

The subject is located on Essex Street in the eastern section of the city of Lynn. The immediate area is comprised of a compatable mix of residential uses consisting primarily of detached single, and two to four family dwellings along with a small number of mixed use and small commercial uses. Typical home in the immediate area was constructed on or around the turn of the century and is situated on a typical 2,000 sf to 6,000 sf site. Within a 1 mile radius are elementary schools, playgrounds, high school, local shopping, municipal services, the center of the city and State highway Routes 107 and 1A. There are no unfavorable neighborhood factors are noted.

**General Neighborhood Comments.... (Continued)**

During the appraisal process, the appraiser has investigated all available data sources which included MLS, Assessor Records, B & T and appraiser files. Conclusions contained in this report with regard to property values, demand/supply and marketing time are based on the appraiser's expertise in this particular territory.

**Comparison of Listings to Subject Property...**

All listings are considered similar in style and utility. The best available 2 family listings / pendings in the subject's community are offered as listing comparables. All listing comps are comparable in terms of location but all are smaller in size. Listing 2 is most simiair in condition. Listings 1 and 3 are inferior in condition.

**Site Comments...**

The subject site is typical for the area in size and appeal. Subject has a small rear yard and a paved driveway for offstreet parking leading to a two car detached garage. The site is level and the site utility is estimated at 100%. No adverse easements or encroachments are noted. Subject preexists current zoning and is legal nonconforming with regard to lot dimesnional requirements. If destroyed, the subject could be rebuilt on the same footprint within a 1 year period per the city of Lynn Building Department. The majority of sites in the area are also noncpnforming, not adverse.

**Adverse Environmental Conditions...**

At the time of inspection the appraiser did not observe any apparent environmental deficiencies. Although the appraiser is not qualified in environmental or 21E law, a general observation for obvious adverse environmental items was made; none were apparent. Environmental hazards such as radon gas, Urea Formaldehyde Foam Insulation (UFFI), lead paint, etc., cannot be determined during the appraisal process and would be better determined by an expert in the above referenced fields.

**Comments on Additional Features & Condition of Improvements...**

The subject is a wood frame 2 family style dwelling which, as of the date of inspection, was considered to be in good overall physical condition. The subject has been extensively renovated in the past 12-24 months including new heating systems, new kitchens, expansion to the third floor with all new rooms; a recently finished basement with 4 rooms and a full bathroom, interior and exterior painting and various cosmetic updates. Subject has two, oil fired heating system with the tanks located above the ground in the basement and and separately metered electric service. All mechanical systems appear in working order and there were no immediate repairs deemed necessary. No functional or external inadequacies were noted.

**Reconciliation of Rental Data and Support for Estimated Market Rents...**

Typical 2 and 3 family home in the area is owner occupied with rental units rented on a month to month, tenant at will basis. The rental comps displayed within this report were selected to determine the market rents for the subject units. Rental comps displayed are from similar residential locations and offer similar market appeal. Supply and demand for rental units in the area is in balance and stable but nearing shortage levels due to demand and proximity to areas of employment, highways, hospitals, schools, and shopping centers. Rental conditions in the area remain stable. The estimated rents for the subject are based upon a review of available data and consultation with local realtors and rental agents in the area. Estimated rents are with owner providing water and sewer and tenant paying all utilities.

**Comments on Sales Comparison ...**

GLA adjusted at $15 per square foot based upon a matched pair analysis of several sales. No adjustment warranted under 75 sf. Any differences in room count reflected in GLA adjustment. Comp 2 adjusted for overall inferior condition for lack of comparable recent updating based upon matched pair with comps 1 and 3. Full baths adjusted at $6,000. Comp 3 adjusted for smaller site based upon a market matched pair analysis. All other adjustments were market extracted. Comp 1 is over 1 mile from a comparable location. Comp 4 is over 6 months old from subject neighborhood and added for support. All comps were weighted in the final analysis and all comps support the final opinion of value.

Designed by United Systems Software   (800) 969-8727

**TEXT ADDENDUM**

**(Continued)**

The subjects value falls within the adjusted range of values.

**Reconciliation Comments...**

All three approaches to value were considered in estimating the market value for the subject property. The Income Approach was utilized but not weighted due to the typical 2 and 3 family in the area being owner occupied. The Cost Approach while supportive of the overall value estimate was not weighted due to the age of the dwelling and difficulty in determining accrued depreciation. Most weight is placed on the Sales Comparison Approach as it is considered to be the most reliable due to the availability of data and is considered most reflective of current market conditions.

**CURRENT AGREEMENT OF SALE, OPTION, OR LISTING OF SUBJECT**

Subject has not been offered for sale in the past 12 months. The subject last transferred for $1 on 2/27/03. This was a transfer of convenience between family members.

**Intended User & Intended Use of Appraisal**

Matthews Appraisal Associates was contracted by the above mentioned client to estimate the market value of the subject property as defined within the Uniform Standards of Professional Appraisal Practice as well as FIRREA, FNMA and FHLMC. The appraisal is intended to be utilized by the above mentioned client solely for the purpose of assisting the above mentioned client or its assignee and is not intended for any other use by any other party or for any other use.

**Scope & Purpose of Appraisal**

My analysis, opinions and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Appraisal Practice (USPAP) as promulgated by the Appraisal Standards Board of the Appraisal Foundation (USPAP Rule 2-3).

The property rights appraised are "Fee Simple" interest, a form of ownership which implies absolute ownership of the subject property. The subject has also been appraised to its Higest & Best Use as defined within the Uniform Standards of Professional Appraisal Practice (USPAP).

As part of the appraisal process, I have made a number of investigations and analyses. I relied on my expertise in the field, data contained in office files, as well as public and private sources which included town hall records and multiple listing service. Market data collected for the report were gathered utilizing all available sources which including, but not limited to, MLS, other appraisal professionals, real estate brokers and agents, registry of deeds and property owners and others.

**Highest & Best Use**

Highest & Best Use is defined as, the most reasonably probable and legal use of vacant or improved land, which is physically possible, appropriately supported, financially feasible, and results in the highest value.

## Operating Income Statement
### One- to Four-Family Investment Property and Two- to Four-Family Owner-Occupied Property

File No.    128 124AM

Property Address

Street  114 Essex Street                    City  Lynn          State  MA    Zip Code  01902

**General Instructions:**    This form is to be prepared jointly by the loan applicant, the appraiser and the lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an "unfurnished" unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expenses | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☒  No ___ | TAW | $ 1200.00 | $ 1200.00 | Electricity ......... | ☐ | ☒ |
| Unit No. 2 | Yes ___  No ☒ | Owner ___ | $ 0.00 | $ 1850.00 | Gas ..... . . . | ☐ | ☐ |
| Unit No. 3 | Yes ___  No ___ | | $ ___ | $ ___ | Fuel Oil ... . . | ☐ | ☒ |
| Unit No. 4 | Yes ___  No ___ | | $ ___ | $ ___ | Fuel (Other) | ☐ | ☐ |
| Total | | | $ 1200.00 | $ 3050.00 | Water/Sewer    ..... | ☒ | ☐ |
| | | | | | Trash Removal | ☐ | ☐ |

The applicant should complete all of the income and expense projections for existing properties provide actual year-end operating statements for the past two years (or new properties the applicant's projected income and expenses must be provided). This Operating Income Statement and any previous operating statement the applicant provides, must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g., Applicant/Appraiser 288/300) If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item.) Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

### Annual Income and Expense Projection for Next 12 Months

| Income (Do not include income for owner-occupied units) | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|
| Gross Annual Rental (from unit(s) to be rented)  . . . . . . . . . | $ 14400 | $ ___ |
| Other Income (include sources)  . . . . .  . . . | + 0 | + ___ |
| Total | $ 14400 | $ 0 . . __ |
| Less Vacancy/Rent Loss  . . . .  . . . .  . . . . . . | – 720  ( 5.00 %) | – 0  ( ___ %) |
| Effective Gross Income  . .  . .  . . . .  . . . | $ 13680 | $ 0 |

| Expenses (Do not include expenses for owner-occupied units) | | |
|---|---|---|
| Electricity . . . . . . . . . . . . | ___ | ___ |
| Gas . . . . . . . . . . . . . | ___ | ___ |
| Fuel Oil . . . . . . . . . . . . | ___ | ___ |
| Fuel . . . . . . . . . . . . . . . . (Type – _____ ) | ___ | ___ |
| Water/Sewer . . . . . . . . | 400 | ___ |
| Trash Removal . . . . . . . | ___ | ___ |
| Pest Control . . . . . . . | ___ | ___ |
| Other Taxes or Licenses . . . . . . | ___ | ___ |
| Casual Labor  . . . . . . . . . .<br>This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | 200 | ___ |
| Interior Paint/Decorating<br>This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | 300 | ___ |
| General Repairs/Maintenance  . . . . . . . . . .<br>This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | 250 | ___ |
| Management Expenses . . . . . . . . . .<br>These are the customary expenses that a professional management company would charge to manage the property | ___ | ___ |
| Supplies  . . . . . . .<br>This includes the costs of items like light bulbs, janitorial supplies, etc. | 125 | ___ |
| Total Replacement Reserves – See Schedule on Pg 2  . . . . . . | 250 | ___ |
| Miscellaneous  . . . . . . . . . . . . | ___ | ___ |
| . . . . . . . . . . . . . . | ___ | ___ |
| . . . . . . . . . . . . . . . . | ___ | ___ |
| . . . . . . . . . . . . . . . | ___ | ___ |
| . . . . . . . . . . . . . . . | ___ | ___ |
| . . . . . . . . . . . . . . . | ___ | ___ |
| **Total Operating Expenses**  . . . . . . . . . . . . | $ 1525 | $ ___ |

File No.    128.124AM

## Replacement Reserve Schedule

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year -- such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc. -- should be expensed on a replacement cost basis.

| Equipment | | Replacement Cost | Remaining Life | | | | By Applicant/ Appraiser | | Lender Adjustments |
|---|---|---|---|---|---|---|---|---|---|
| Stoves/Ranges | @ $ | 450 | ea. ÷ | 15 Yrs. X | 1 | Units = $ | | 30 | $ |
| Refrigerators | @ $ | | ea. ÷ | Yrs. X | | Units = $ | | | $ |
| Dishwashers | @ $ | | ea. ÷ | Yrs. X | | Units = $ | | | $ |
| A/C Units | @ $ | | ea. ÷ | Yrs. X | | Units = $ | | | $ |
| C Washer/Dryers | @ $ | | ea. ÷ | Yrs. X | | Units = $ | | | $ |
| HW Heaters | @ $ | 600 | ea. ÷ | 15 Yrs. X | 1 | Units = $ | | 40 | $ |
| Furnace(s) | @ $ | 4500 | ea. ÷ | 30 Yrs. X | 1 | Units = $ | | 150 | $ |
| (Other) | @ $ | | ea. ÷ | Yrs. X | | Units = $ | | | $ |
| Roof | @ $ | 5000 | ea. ÷ | 20 Yrs. X | One Bldg. = | $ | | 250 | $ |

**Carpeting** (Wall to Wall)

| | | | | Remaining Life | | | | |
|---|---|---|---|---|---|---|---|---|
| (Units) | Total Sq. Yds. @ $ | | Per Sq. Yd. ÷ | Yrs = | $ | | $ | |
| (Public Areas) | Total Sq. Yds. @ $ | | Per Sq. Yd. ÷ | Yrs. = | $ | | $ | |

**Total Replacement Reserves. (Enter on Pg. 1)**      $      470   $

## Operating Income Reconciliation

$ 13680     − $ 1525     = $ 12155     − 12 = $ 1012.92
Effective Gross Income    Total Operating Expenses    Operating Income    Monthly Operating Income

$ 1013     − $     = $
Monthly Operating Income    Monthly Housing Expense    Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's Instructions for 2–4 Family Owner-Occupied Properties

▫ If Monthly Operating Income is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

▫ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the subject property to the borrower's stable monthly income.

Underwriter's Instructions for 1–4 Family Investment Properties

▫ If Net Cash Flow is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

▫ The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total monthly housing expense for the borrower's primary residence to the borrower's stable monthly income.

Appraiser's Comments (including sources for data and rationale for the projections)    The above expenses appear adequate to properly maintain the subject property. Income and expense estimates based upon one tenant at market rent and one owner occupant ( occupying the 2nd & 3rd floor unit).

Allan Matthews        _(signature)_        12/29/04
Appraiser Name        Appraiser Signature        Date

Underwriter's Comments and Rationale for Adjustments

Underwriter Name        Underwriter Signature        Date



**LOCATION MAP**     File No.     128.124AM

Borrower/Client   Cary Maldonado
Address   114 Essex Street
City   Lynn          County   Essex     State   MA     Zip Code   01902
Lender/Client   New Fed Mortgage Corp.



## SUBJECT PHOTOGRAPH ADDENDUM

| | | | | |
|---|---|---|---|---|
| Borrower/Client: | Cary Maldonado | | | |
| Address. | 114 Essex Street | | | |
| City: Lynn | County: Essex | State: MA | Zip Code. 01902 | |
| Lender/Client | New Fed Mortgage Corp. | | | |



Front View



Rear View



Street View

## SUBJECT PHOTOGRAPH ADDENDUM

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client: | Cary Maldonado | | | | | |
| Address: | 114 Essex Street | | | | | |
| City: Lynn | | County: Essex | | State: MA | | Zip Code: 01902 |
| Lender/Client: | New Fed Mortgage Corp. | | | | | |

Front View



Rear View



Street View



## COMPARABLE PHOTOGRAPH ADDENDUM

| | | | | |
|---|---|---|---|---|
| Borrower/Client: | Cary Maldonado | | | |
| Address | 114 Essex Street | | | |
| City Lynn | County Essex | State MA | Zip Code 01902 | |
| Lender/Client: | New Fed Mortgage Corp. | | | |



**Sales Comparable 1**
**Front View**

| | |
|---|---|
| Address: | 137 Alley Street |
| Prox. to Subject: | 1.62 Miles SW |
| Sales Price, $ | 428000 |
| Gross Living Area: | 2904.00 |
| Total Rooms: | 14 |
| Total Bedrooms: | 8 |
| Total Bathrooms: | 3.00 |
| Location: | Residential/Avg |



**Sales Comparable 2**
**Front View**

| | |
|---|---|
| Address: | 174 Western Avenue |
| Prox. to Subject: | .93 Miles SW |
| Sales Price, $ | 426000 |
| Gross Living Area: | 3611.00 |
| Total Rooms: | 14 |
| Total Bedrooms: | 8 |
| Total Bathrooms: | 3.00 |
| Location | Residential/Avg |



**Sales Comparable 3**
**Front View**

| | |
|---|---|
| Address: | 132 Empire Street |
| Prox. to Subject: | .11 Miles N |
| Sales Price, $ | 410000 |
| Gross Living Area: | 2216.00 |
| Total Rooms: | 12 |
| Total Bedrooms: | 7 |
| Total Bathrooms: | 2.00 |
| Location: | Residential/Avg |

File No.   128.124AM

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto, and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession, but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraisers judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**    The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1    The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2.    The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraisers determination of its size.

3.    The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.    The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.    The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.    The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.    The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.    The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9    The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

File No. 128.124AM

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated, in the appraisal report, only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraisers certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**    114 Essex Street, Lynn, MA 01902

| APPRAISER: | SUPERVISORY APPRAISER (only if required) |
|---|---|
| Signature: *(signature)* | Signature: |
| Name: Allen Matthews | Name: |
| Date Signed: 12/29/04 | Date Signed: |
| State Certification #: 4234 CG | State Certification #: |
| or State License #: | or State License #: |
| State: MA | State: |
| Expiration Date of Certification or License: 1/13/05 | Expiration Date of Certification or License: |
| | ☐ Did ☐ Did Not Inspect Property |

## COMPARABLE PHOTOGRAPH ADDENDUM

Borrower/Client   Cary Maldonado
Address:   114 Essex Street
City:  Lynn          County:  Essex          State  MA          Zip Code:  01902
Lender/Client   New Fed Mortgage Corp.



Sales Comparable 4
Front View

Address:               9-10 Timson Street
Prox. to Subject:      .22 Miles SW
Sales Price: $          457000
Gross Living Area:     4122.00
Total Rooms:           12
Total Bedrooms:        6
Total Bathrooms:       2.00
Location:              Residential/Avg

Address:               174 Western Avenue
Prox. to Subject:      .93 Miles SW
Sales Price: $          426000
Gross Living Area:
Total Rooms:
Total Bedrooms:
Total Bathrooms:
Location:              Residential/Avg

Address:               132 Empire Street
Prox. to Subject:      .11 Miles N
Sales Price: $          410000
Gross Living Area:
Total Rooms:
Total Bedrooms:
Total Bathrooms:
Location:              Residential/Avg

**LOCATION MAP**

File No. 129.124AM

Borrower/Client Cary Maldonado
Address 114 Essex Street
City Lynn County Essex State MA Zip Code 01902
Lender/Client New Fed Mortgage Corp.



## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No. 128,124AM

The undersigned has visited these recent sales of properties most similar and proximate to the subject property and has described and analyzed these in this analysis. If there is a significant variation between the subject and comparable properties, the analysis includes the dollar adjustment reflecting the market reaction to these items or an explanation supporting the market data. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus ( - ) adjustment is made, thus reducing the adjusted sales price of the comparable property. If a significant item in the comparable property is inferior to, or less favorable than, the subject property, a plus ( + ) adjustment is made, thus increasing the adjusted sales price of the comparable property. (I) Sales Price - Gross Monthly Rent)

| ITEM | SUBJECT | COMPARABLE SALE NO. A | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 114 Essex Street<br>Lynn, MA 01902 | 8-10 Timson Street<br>Lynn, MA | | | | | |
| Proximity to subject | | 22 Miles SW | | | | | |
| Sales price | $ Ref. | ☒ Unl ☐ Furn $ 457000 | | ☐ Unl ☐ Furn $ | | ☐ Unl ☐ Furn $ | |
| Sales price per GBA | $ | $ 110.87 | | $ | | $ | |
| Gross monthly rent | $ 3050 Est. | $ 3000 | | $ | | $ | |
| Gross rng rent mult (I) | 0.00 | 152.33 | | | | | |
| Sales price per unit | $ 0 | $ 228500.00 | | $ | | $ | |
| Sales price per room | $ | $ 38083.33 | | $ | | $ | |
| Data and/or<br>Verification Sources | Inspection/Pub.R<br>Assessor | MLS<br>Assessor | | | | | |
| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + ( )$ Adjustment | DESCRIPTION | + ( )$ Adjustment | DESCRIPTION | + ( )$ Adjustment |
| Sales or financing<br>concessions | | None<br>Disclosed | | | | | |
| Date of sale/time | | 3/11/04 | 0 | | | | |
| Location | Residential/Avg | Residential/Avg | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 5081 Sf 100%U | 4251 Sf 100%U | | | | | |
| View | Neighborhood/Av | Neighborhood/Av | | | | | |
| Design and appeal | 2 Family/Avg | 2 Family/Avg | | | | | |
| Quality of construction | Average | Average | | | | | |
| Age | 74 yrs | 99 yrs | | | | | |
| Condition | Good | Similar | | | | | |
| Gross Building Area | 3370 Sq. Ft. | 4122 Sq. Ft. | -11300 | Sq. Ft. | | Sq. Ft. | |

| | No of Units | Room Count | | | No Vac | No of Units | Room Count | | | No Vac | No of Units | Room Count | | | No Vac | No of Units | Room Count | | | No Vac |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Tot | Br | Bath | | | Tot | Br | Bath | | | Tot | Br | Bath | | | Tot | Br | Bath | |
| Unit<br>breakdown | 1 | 5 | 2 | 1.00 | 0 | 1 | 6 | 3 | 1.00 | 0 | | | | | | | | | | |
| | 1 | 9 | 6 | 2.00 | 0 | 1 | 6 | 3 | 1.00 | 0 | | | | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Basement description | Full/4rooms, bath | Full/Unfinished | 12000 | | | | |
| Functional utility | Average | Average | | | | | |
| Heating/cooling | Individual/None | Individual/None | | | | | |
| Parking on/off site | 2 Car Gar/On site | On site | 5000 | | | | |
| Project amenities and<br>fee (if applicable) | 4 Cov. Porches | 4 Cov. Porches | | | | | |
| Other | None | None | | | | | |
| | None | None | | | | | |
| Net Adj. (total) | | ☒ + ☐ - $ | 5700 | ☒ + ☐ - $ | 0 | ☒ + ☐ - $ | 0 |
| Adjusted sales price<br>of comparables | | | 462700 | | 0 | | 0 |

Comments on sales comparison (including reconciliation of all indicators of value as to consistency and relative strength and evaluation of the typical investor's/purchasers motivation

in that market).    See attached addendum.

| ITEM | SUBJECT | COMPARABLE NO. 4 | COMPARABLE NO. 5 | COMPARABLE NO. 6 |
|---|---|---|---|---|
| Date, Price and Data<br>Source for prior sales<br>within year of<br>appraisal | 2/27/03<br>$1(family transfer)<br>Assessor/Deed | No Prior Sales<br>Within 12 Months<br>Assessor | | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:

See attached addendum.

## MORTGAGE

THIS MORTGAGE is made this ____14th____ day of ___March____ __2005____,
**19**___, between ___Cary Maldonado_____,
presently residing at _114 Essex Street, Lynn, MA 01902_____
(herein "Mortgagor(s)"), and the Clerk of the United States
District Court for the District of Massachusetts, John W.
McCormack Post Office & Courthouse Building, Boston,
Massachusetts (herein "Mortgagee").

WITNESSETH, for consideration paid and to secure a personal bond
of even date for _$50,000.00_____ (herein
"Defendant"), in Criminal No. _____, before the United
States District Court for the District of Massachusetts (herein
"Court"), in the amount of _Fifty Thousand_____
($_50,000.00_____) Dollars executed by the Defendant and the
Mortgagor(s) in favor of the United States of America, and to
secure due observance and performance of the obligation, terms,
and conditions as set forth in an Order Setting Conditions of
Release dated _March 14, 2005____, 19 ___, and filed with the
Court, and to further secure the performance of all other
covenants and agreements of or by the Defendant and Mortgagor(s)
herein for the benefit of the Mortgagee, which may now exist or
may hereafter exist or accrue while this Mortgage is still
undischarged of record, and in furtherance of and pursuant to an
escrow agreement made this day between the Mortgagor(s), the
United States Attorney for the District of Massachusetts and the
Mortgagee, the Mortgagor(s) hereby mortgage, with power of sale,
the following parcel of real property, with the following
covenants thereon, situate, lying and being in the County of
___Essex_____, Commonwealth of Massachusetts,
and more particularly described in the following deed:

A deed from ___Cary Maldonado_____
to ___United States of America_____
dated _March 14, 2005_____, 19___, and recorded in the
_____ County Registry of Deeds at
Book _____, Page _____;

TOGETHER with all the improvements now or hereafter erected on
the property, and all easements, rights, appurtenances, rents
royalties, mineral, oil and gas rights and profits, water, water
rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements
and additions thereto, shall be deemed to be and remain a part of
the property covered by this Mortgage; and all of the foregoing,
together with said property are hereinafter referred to as the
"Property."

THE MORTGAGOR(S) covenant with the Mortgagee as follows:

(mortgage.frm - 12/94)

-2-

1.  That the Mortgagor(s) shall pay the indebtedness as
hereinbefore provided.

2.  That the Mortgagor(s) will keep the Property insured against
loss by fire or hazards included within the term "extended
coverage" for the benefit of the Mortgagee; that the Mortgagor(s)
will assign and deliver the policies to the Mortgagee; and that
the Mortgagor(s) will reimburse the Mortgagee for any premiums
paid or insurance made by the Mortgagee on the Mortgagor(s)'s
default in so insuring the Property or in so assigning and
delivering the policies. However, the Mortgagee shall never be
required to maintain insurance of any type or description on the
Property.

3.  That the Mortgagor(s) shall keep the Property in good repair
and shall not commit waste or permit impairment or deterioration
of the Property, and no building on the Property shall be removed
or demolished without the consent of the Mortgagee.

4.  That the Mortgagor(s) will pay all taxes, assessments or
water rates, and in default thereof, the Mortgagee may, but is
not required to, pay the same. In the event that the Mortgagee
elects not to pay the same, the Mortgagee is not required to so
notify the Mortgagor(s).

5.  That the proceeds of any award or claim for damages, direct
or consequential, in connection with any condemnation or other
taking of the Property, or part thereof, or for conveyance in
lieu of condemnation, said proceeds not to exceed the dollar
amount of the personal bond secured by this Mortgage, shall be
delivered to the Mortgagee, who shall hold such proceeds in a
non-interest bearing escrow account until either (A) the personal
bond has been discharged by the Court, whereupon, and only upon
an order of the Court, the Mortgagee shall deliver said proceeds
to the Mortgagor(s), or (2) the Defendant fails to observe the
Order Setting Conditions of Release and is defaulted by a
judicial officer of the Court, whereupon the proceeds shall be
disbursed for the benefit of the United States of America in
accordance with, and only upon, an order of the Court.

6.  That notice and demand or request may be made in writing and
may be served in person or by mail.

7.  That the Mortgagor(s) will warrant and defend the title to
the Property against all claims and demands.

8.  That the Mortgagor(s) will create no further encumbrances of
any kind against the Property.

(mortgage.frm - 12/94)

–3–

9.  That the Mortgagor(s), in case a sale shall be made under the power of sale, will, upon request, execute, acknowledge and deliver to the purchaser or purchasers a deed or deeds of release confirming such sale, and that the Mortgagee is appointed and constituted the attorney irrevocable of the Mortgagor(s) to execute and deliver to said purchaser a full transfer of all policies of insurance on the Property at the time of such sale.

10.  That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

11.  Notwithstanding any other agreement between the Mortgagor(s) and Mortgagee, or any provision of law, the Mortgagee shall not be required to discharge this Mortgage except upon order of the Court. It shall be the obligation of the Mortgagor(s) to furnish the Mortgagee with a certified copy of said order.

IN WITNESS WHEREOF, this Mortgage has been duly executed by the Mortgagor(s).

_____          _____

_____          _____

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                          March 14, 2005        , 19____

Then personally appeared _____ Cary Maldonado _____
and acknowledged the foregoing to be ___her___ free act and deed
before me.

_____
NOTARY PUBLIC

My Commission Expires: _____

Jon R. Garlinghouse, Notary Public
Commonwealth of Massachusetts
My Commission Expires 5/14/2010

(mortgage.frm - 12/94)

## *QUITCLAIM DEED*

I, Cary Maldonado, of Lynn, Essex County, Massachusetts in consideration of One Dollar ($1.00) and other valuable consideration paid

**GRANT TO**     United States of America

with *QUITCLAIM COVENANTS*

The land with the buildings thereon in Lynn, Massachusetts bounded and described as follows:

NORTHWESTERLY by Essex Street, 50 feet;
NORTHEASTERLY by land now or formerly of Jackson, *et al* 103 feet;
SOUTHEASTERLY by land now or formerly of Wiggin, 50 feet;
SOUTHWESTERLY by land now or formerly of Getchell, 101 feet.

Being Lot 6 on plan of this and other lots drawn by Jacob Purinton.

Being the same premises conveyed to me by Jose Maldonado dated February 26, 2003 recorded with the Essex South Registry of Deeds at Book 20240, Page 193.

Executed as a sealed instrument this 14th day of March 2005.

_____
Cary Maldonado

### *The Commonwealth of Massachusetts*

Suffolk, ss.                                                    March 14, 2005

On this 14th day of March 2005 before me, the undersigned notary public, personally appeared the above-named Cary Maldonado and proved to me through satisfactory      evidence      of      identification,      which      was
_MASS Drivers License # 58481860Y_____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_____
Notary Public
My Commission Expires:

Jon P. Garlinghouse, Notary Public
Commonwealth of Massachusetts
My Commission Expires 5/14/2010

LOCATION: 114 Essex Street, LYNN, MA 01902

## ESCROW AGREEMENT

ESCROW AGREEMENT entered into this ___14th___ day of March _2005_____, ___, among  Cary Maldonado _____ (herein "Surety"), Donald K. Stern, in his official capacity as United States Attorney for the District of Massachusetts (herein "United States Attorney"), and Tony Anastas, in his official capacity as Clerk of the United States District Court for the District of Massachusetts (herein "Escrow Agent").

WHEREAS the Surety is desirous of effecting the release of _Yohan A. Germosen _____ (herein "Defendant") in Criminal No. _____, on the terms and conditions of bail set forth in an Order Setting Conditions of Release (herein "Bail Order") dated and entered by the Honorable Robert B. Colins _____, United States District Judge/Magistrate Judge, and has agreed to execute a personal bond in the amount of _____ _Fifty Thousand_____ ($ 50,000.00  ) Dollars (herein "Personal Bond") to secure the Defendant's compliance with the terms and conditions of the Bail Order.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties hereto agree as follows:
1.   The Surety shall execute a quitclaim deed to the parcel of real property located at _114 Essex Street, Lynn, MA 01902__ _____ in favor of the United States of America, and deliver said deed to the Escrow Agent to be held in escrow pursuant to the terms of this Agreement.

2.   The Surety further agrees to execute any additional documents and take any action necessary to effectuate the transfer of said parcel of real property and facilitate the sale of such property in the event that the Defendant is in default of the terms and conditions of the Bail Order or Personal Bond.

3.   The Escrow Agent shall hold the quitclaim deed in escrow under the following terms and conditions:

      A.   In the event that the Defendant fails to appear as required at all proceedings in Criminal No. _____ or otherwise violates any condition of bail, and Defendant is declared to be in default by a judicial officer of the United States District Court for the District of Massachusetts, then, upon order of the Court, and in lieu of or in addition to foreclosure proceedings on any mortgage granted by the Surety, the Escrow Agent shall tender the quitclaim deed to the United States Attorney, and he shall cause the same to be immediately recorded without notice to the Surety.  Any requirement that foreclosure proceedings be commenced upon any mortgage granted by the Surety in connection with Criminal No. _____ is expressly waived by the Surety.

(escrow.frm - 10/96)

-2-

B.  This Agreement shall terminate upon the final disposition of Criminal No. _____ and written discharge of the bond provided to the Surety by the United States of America.  Upon such termination, and upon order of the Court, the Escrow Agent shall deliver the quitclaim deed to the Surety.

5.  The validity and construction of this Agreement shall be governed by the law of the Commonwealth of Massachusetts.

6.  This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and personal representatives.

IN WITNESS WHEREOF, the parties here have caused this Agreement to be executed as of the date first written above.

ESCROW AGENT:                          SURETY:

Sarah Thornton
~~TONY ANASTAS~~, CLERK OF COURT       X Cary Maldonado

By: _____          _____
        Deputy Clerk

MICHAEL SULLIVAN
~~DONALD K. STERN~~,                    _____
UNITED STATES ATTORNEY

By: _____          _____
      Asst. U.S. Attorney


                    COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                    March 14, 2005      , 19____

Then personally appeared ___Cary Maldonado_____
_____ and acknowledged the foregoing to
be ___her_____ free act and deed before me.

                              _____
                              NOTARY PUBLIC

My Commission Expires: Jon R. Garlinghouse, Notary Public
                       Commonwealth of Massachusetts
                       My Commission Expires 5/14/2010

                                        (escrow.frm - 10/96)